PEOPLE v BURTT

Docket No. 45714. Submitted June 10, 1980, at Grand Rapids.—Decided September 15, 1980.

Barry D. Burtt was convicted of taking fish in the waters of the State of Michigan with a gill net in the District Court for Charlevoix County. The Charlevoix Circuit Court, Martin B. Breighner, J., affirmed the conviction. Defendant appeals, alleging his conduct did not fall within the statutorily proscribed activity. *Held:*

Defendant's participation in an otherwise legal fishing expedition was limited solely to assistance in transferring the netted fish from a boat to a truck. As such, his conduct did not amount to a taking of the fish within the meaning of the statute.

Conviction reversed, and sentence vacated.

ALLEN, P.J., dissented. He would hold that the use of the gill net to transfer the fish from the boat to the truck constituted a continuing violation of the statute. He would affirm.

OPINION OF THE COURT

1. FISH AND FISHERIES — FERAE NATURAE — PROPERTY OF STATE — PERSONAL PROPERTY — TAKING OF FISH — WORDS AND PHRASES.

Fish are considered to be *ferae naturae* and property of the state until taken; "taking" denotes the exertion of such control over the fish that they can be said to come into a person's possession.

2. ANIMALS — FERAE NATURAE — PROPERTY RIGHTS.

A person cannot obtain an interest or property rights in any *ferae naturae* until it has been taken into his own keeping and has been subjected to his control.

REFERENCES FOR POINTS IN HEADNOTES

[1] 35 Am Jur 2d, Fish and Game §§ 1-5.
[2] 35 Am Jur 2d, Fish and Game § 2.
[3] 35 Am Jur 2d, Fish and Game §§ 2, 47, 49.
[4] 73 Am Jur 2d, Statutes §§ 145, 146.
[5] 35 Am Jur 2d, Fish and Game § 47.
[6] 35 Am Jur 2d, Fish and Game § 49.

3. FISH AND FISHERIES — ILLEGAL TAKING — STATUTES.

> Assisting in the transferring of legally-netted fish from a boat to
> a truck does not constitute a taking as proscribed by statute
> (MCL 302.1; MSA 13.1602).

DISSENT BY ALLEN, P.J.

4. STATUTES — STATUTORY CONSTRUCTION — LEGISLATIVE INTENT.

> *The purpose of a court in construing a statute is to give effect to
> the intent of the Legislature, and where there is doubt or
> conflict, the spirit and purpose of the statute should prevail
> over the strict letter.*

5. FISH AND FISHERIES — SPORTSMEN FISHING LAW — LEGISLATIVE
   INTENT — GILL NETS — STATUTES.

> *The primary purpose of the Legislature in enacting that portion
> of the Michigan Sportsmen Fishing Law dealing with the
> unlawfulness of fishing devices was to ban the total, rather
> than partial use of gill nets (MCL 302.1; MSA 13.1602).*

6. FISH AND FISHERIES — SPORTSMEN FISHING LAW — USE OF GILL
   NETS — STATUTES.

> *Use of a gill net to transfer fish caught with a net from a boat to
> a truck constitutes a continuing violation of the Michigan
> Sportsmen Fishing Law prohibition against the use of such
> nets.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Frank G. Hoff-
man,* Assistant Prosecuting Attorney, for the peo-
ple.

*Richard T. Askwith,* for defendant.

Before: ALLEN, P.J., and D. F. WALSH and G. R.
McDONALD,* JJ.

D. F. WALSH, J. Defendant appeals his jury con-
viction of the offense of taking fish in the waters of
the State of Michigan with a gill net, MCL 302.1;
MSA 13.1602.

On August 10, 1978, Michigan Conservation Offi-
cers observed defendant in the back of a pickup

---

* Circuit judge, sitting on the Court of Appeals by assignment.

truck that was parked in the waters of Lake Michigan. A fishing boat, containing approximately 800 pounds of lake trout and whitefish entangled in gill nets, was parked alongside a truck. Both the boat and the nets belonged to Indian fishermen who were also present at the location. Defendant, a non-Indian, assisted the fishermen by pulling in the nets from the boat to the truck. The officers intervened and requested identification. Unlike the others, defendant did not produce a Bureau of Indian Affairs card. He was subsequently charged with violating MCL 302.1; MSA 13.1602.

In affirming the decision of the district court, the circuit judge stated that the instant offense involved a series of acts which included placing the net in the water, ensnaring the fish, removing the net and fish into a receptacle such as a boat, and then transferring the fish from the boat to some means of transporting the fish from the lake.

The issue on appeal is whether defendant's conduct fits within the statutorily proscribed activity, *i.e.,* the taking of fish in state waters with a gill net. We hold that defendant's actions did not amount to a "taking" of fish and defendant's conviction must be reversed.

MCL 302.1; MSA 13.1602, provides that:

"A person shall not take, catch, or kill * * * a fish in the waters of this state with * * * a net * * *."

The term "taking" has been the subject of prior judicial interpretation with reference to this state's fishing laws because fish are considered to be *ferae naturae* and property of the state until "taken". *Aikens v Dep't of Conservation,* 387 Mich

495; 198 NW2d 304 (1972). In *Lincoln v Davis,* 53 Mich 375, 391; 19 NW 103 (1884), the Supreme Court likened taking to "capture", and according to *Sterling v Jackson,* 69 Mich 488, 541; 37 NW 845 (1888) (CAMPBELL, J., dissenting), one cannot obtain an interest in any *ferae naturae* until it has been taken into one's own keeping. Similarly, in *People v Collison,* 85 Mich 105, 108; 48 NW 292 (1891), the Court stated that "no individual has any property right in [the fish] until they have been subjected to his control". Finally, in *Beach v Hayner,* 207 Mich 93, 96; 173 NW 487 (1919), taking was described as tantamount to reducing to actual possession.

Based on these definitions, the term "taking" denotes the exertion of such control over an object that the object can be said to have come into one's possession. Utilizing this meaning, we cannot regard defendant's conduct as a "taking" of fish. Defendant's participation in the Indians' legal fishing expedition was limited solely to assistance in transferring the netted fish from the boat to the truck. Defendant did not partake in any activity in the boat which resulted in netting the fish. The term "taking" refers to the capturing or reducing to actual possession that occurred when the fish were retrieved from the water and placed in the boat. The fish had already been "taken" in the state waters when defendant became involved in the activity near the shoreline. In our judgment, defendant's actions do not fall under the proscriptions of the statute.

In view of our disposition of this issue, we need not address the other arguments raised by defendant.

Defendant's conviction is reversed and his sentence is hereby vacated.

G. R. McDonald, J., concurred.

Allen, P.J. *(dissenting)*. I disagree. The common law rule on which the majority position is posited has no or little relationship to the question before us. The question before us is the intent of the Legislature when it enacted § 1 of the statute proscribing the use of certain fishing devices. The doctrine that fish are *ferae naturae* and the property of the state until "taken" was the common law's response to the question of the rights and title of a hunter in respect of game which he was pursuing or had killed or wounded. Its origins are ancient.

"It was said in Charlebois v Raymond, (1867) 12 Lower Can Jur 55, that the rule that one has no property right in wild animals which he has wounded, but of which he has not taken possession, prevailed among the Romans and was followed by the Emperor Justinian. And, besides being a rule of the Romans, it is also a rule of the common law. Swift v Gifford, (1872) 2 Low Dec 110, Fed Cas No 13,696; Buster v Newkirk (1822) 20 Johns (NY) 75; and Pierson v Post (1805) 3 Caines (NY) 175, 2 Am Dec 264, wherein it was said: 'Justinian's Inst Lib 2, title 1, § 13, and Fleta, lib 3 chap 2, p 175, adopt the principle that pursuit alone vests no property or right in the huntsman; and that even pursuit accompanied with wounding is equally ineffectual for that purpose, unless the animal be actually taken. The same principle is recognized in Bracton, lib 2, chap 1, p 8; Puffendorf, lib 4, chap 6, §§ 2 and 10, defines occupancy of beasts ferae naturae to be the actual corporal possession of them, and Bynkershock is cited as coinciding in this definition.' " Anno: *Rights, title, and remedies of hunter in respect of game which he is pursuing or has killed or wounded,* 49 ALR 1498, 1499.

Subsequently, the doctrine was the device by

which the question of whether or not larceny had been committed was decided. Thus, in the case of fish:

"Where fish have been caught in a net which has not been drawn in, and from which it is not absolutely impossible, but practically so, for them to escape, the owners of the net have acquired such a property in them that the taking of them, by another will constitute larceny. State v Shaw, (1902) 67 Ohio St 157, 60 LRA 481, 65 NE 875, 14 Am Crim Rep 405." 49 ALR 1498, 1500.

"And in State v Thomas (1901) 11 Ohio S & CP Dec 753, it was held that the owner of fish traps containing an opening about 2-1/2 feet square through which the fish entered did not have such a property in the fish while in such traps that the taking of them by another would constitute larceny, since they sometimes came out of the opening after having been inside, although a large majority usually remained therein. The court said: 'Very likely it would be going too far to say that escape must be rendered impossible under all circumstances, as, for instance, the breaking down of apparently insuperable barriers. But the avenues of escape must be closed, and the chances at least reduced to a minimum. It is not enough that their capture is rendered in a high degree probable, or their escape improbable. Escape might be improbable to a rabbit chased by a hound, or a deer from the rifle of an experienced hunter.' " 49 ALR 1498, 1501.

Because the doctrine was developed as an answer to situations totally different from the situation before us, I believe it is error for this Court to consider it controlling in the instant case.

Furthermore, a close reading of the Michigan cases discloses that the word "take" was not construed or even used. Instead, the key word is "capture" or "control". Thus, in the earliest case relied upon by the majority, *Lincoln v Davis,* 53 Mich 375, 391; 19 NW 103 (1884), the Court said:

"The fish are like any other animals ferae naturae, and in this region have always been regarded as *open to capture* by those who have a right to be where they are captured." (Emphasis supplied.)

The majority's reliance on *Sterling v Jackson,* 69 Mich 488, 540-541; 37 NW 845 (1888), is marred both because it was a minority opinion and because the reference was to "capture".[1] In *People v Collison,* 85 Mich 105, 106-108; 48 NW 292 (1891), defendant was convicted in the trial court of violating a statute providing that it was unlawful "for any person to take or catch fish in the waters of Gun Lake" by means of a spear or jacks. On appeal, defendant admitted he had so fished but claimed he was doing so "upon his land, over his own soil, and in his own water". The Supreme Court rejected the defense on grounds that even if defendant's land extended into the lake, he had no right to the fish which being *ferae naturae* belonged to the state "until they have been subjected to his control". Further, at no point does *Aikens v Dep't of Conservation,* 387 Mich 495, 503; 198 NW2d 304 (1972), state that fish are *ferae naturae* "and property of the state until taken" but instead only holds:

"Thus, because fish are *ferae naturae,* they are property of the state, unless otherwise provided by the statute. Plaintiffs were not denied the equal protection of the laws."

The question before us is the meaning of MCL 302.1; MSA 13.1602, which provides:

[1] "With the right to kill or capture such wild fowl necessarily goes the right to use such means as may be most effective to accomplish such purpose, providing the captor keeps within the general laws of the State relating to the protection of game."

"A person shall not take, catch, or kill or attempt to take, catch, or kill a fish in the waters of this state with a spear or grab hook, * * * or a net, * * * or any other means or device other than * * *."

Did the Legislature intend that the offense was committed when the gill net filled with fish was first lifted from the water and *was no longer an offense,* or did the Legislature intend that the offense was a continuing offense as long as the net was employed to bring fish to shore? Clearly, we believe it is the latter.

The purpose of the court in construing a statute is to give effect to the legislative intent. Where there is doubt or conflict, the spirit and purpose of the statute prevails over the strict letter. *Aikens, supra,* 499, and cases cited therein. It seems obvious and, in fact, beyond dispute that when the Legislature enacted the statute, its primary purpose was to ban the *total* rather than the *partial* use of gill nets. Any other construction would eviscerate the statute through the simple device of immunizing from prosecution persons employed to bring the nets filled with fish to shore after the nets were first lifted from the water by other employees. The narrow construction given the statute by defendant leaves a hole in the statute big enough through which "to drive the proverbial truck". That's exactly what happened in the instant case, except that it was a real truck, used amphibiously, which transferred the net still filled with fish from the boat in which the nets were first placed to the shore. The trial court held that

the use of the net was a continuing violation.[2] In
my opinion, the trial court did not err. I would
affirm.

[2] "It is not necessary to infer that he was actually using a gill net
to trap and harvest the fish. To take fish from Lake Michigan by
reason of a gill net, it is necessary to first place the net in the water;
then to ensnare the fish in the net; then to remove the net and
ensnared fish into a suitable receptacle, in this instance, a boat; then
to remove the fish from the boat into some means of transporting the
fish from the lake, in this instance, a pickup truck backed into the
water. This series of acts the jury determined constituted the offense
proscribed by the subject statute."